IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| PRIDE ENERGY COMPANY,<br><br>               Plaintiff/Counter-<br>               Defendant,<br><br>vs.<br><br>THE LONG TRUSTS,<br><br>               Defendant/Counter-<br>               Claimant. | CV 20-182-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |

Plaintiff Pride Energy Company ("Pride") brings this action against Defendant The Long Trusts ("Long Trusts") alleging breach of a Joint Operating Agreement concerning three oil and gas wells located in Montana. (Doc. 26.) Long Trusts has filed a counterclaim alleging breach of the same Joint Operating Agreement. (Doc. 28.)

Presently before the Court are Long Trusts' Motion for Partial Summary Judgment (Doc. 35) and Pride's Motion for Partial Summary Judgment (Doc. 38), which have been referred to the undersigned under 28 U.S.C. § 636(b)(1)(B). The motions are fully briefed and ripe for the Court's review.

Having considered the parties' submissions, the Court **RECOMMENDS** Long Trusts' motion be **DENIED** and Pride's motion be **GRANTED**.

## I.    BACKGROUND[1]

Pride is the operator of three oils wells located in Section 23, Township 23N, Range 54E, Richland County, Montana: BN 10X-23, BN 23-1, and BN 23-1X (the "Wells").  Long Trusts owns working interests in the Wells.  The parties' relationship is governed by a Joint Operating Agreement ("JOA") dated November 11, 1981, which was originally entered into by and among Flare Energy Corporation, Costal Oil & Gas Corporation, and Al-Aquitaine Exploration, Ltd. The JOA provides that the parties are to share expenses in accordance with the Accounting Procedure set forth therein.

The last of the Wells (BN 10X-23) ceased production in 2014.  In August 2019, the Montana Board of Oil and Gas Conservation sent Pride a letter, demanding the plugging of the Wells because they had not produced oil or gas in marketable quantities for over a year.

In April 2020, Pride sent Long Trusts proposals regarding each of the Wells, which included an Authority for Expenditures ("AFE") estimating the cost to plug each Well.  The proposals requested Long Trusts to elect to either (1) participate in the plugging and abandonment and surface reclamation of the applicable Well, and pay its proportionate share of the estimated expenses; or (2) not participate and

---

[1] The background facts set forth here are relevant to the Court's determination of the pending motions for summary judgment and are taken from the parties' submissions and are undisputed except where indicated.

take over operations and assume Pride's proportionate share of all future plugging and abandonment and reclamation costs. Each proposal also requested Long Trusts to pay its portion of the estimated costs within 15 days of receipt of the proposal. The stated estimated cost to plug each Well was $150,000, for a total of $450,000. The proposals indicated Long Trusts' estimated share for all three Wells was $166,424.87.

Long Trusts never made an election in response to the proposals. Long Trusts also has not tendered any payments to Pride for the plugging of the Wells.

Long Trusts contends the actual costs to plug and abandon the Wells was less than estimated; and therefore, Pride improperly demanded payment of over $60,000 more than Long Trusts' actual proportionate share. Long Trusts also argues Pride failed to properly credit its account for the value of a pumping unit that Pride moved to Texas.

Pride admits that the actual plugging costs were less than the estimated costs set forth in the AFEs, and acknowledges that it is not entitled to damages for the full amount of the estimated costs. Pride seeks to recover Long Trusts' proportionate share of the actual costs to plug the wells.

On September 21, 2020, Pride filed this action in the Montana Seventh Judicial District Court in Richland County, Montana. Long Trusts removed the case on December 14, 2020, and thereafter asserted a counterclaim against Pride.

3

Pride now moves for partial summary judgment in its favor, arguing it has satisfied all elements of its claim for breach of contract, with the exception of the amount of damages.  Long Trusts also moves for partial summary judgment, arguing Pride's claims fail as a matter of law because Pride never satisfied a condition precedent of submitting a valid invoice, and because Pride materially breached the contract.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party.  *See Matsushita*, 475 U.S. at 587.

/ / /

/ / /

4

III.    **DISCUSSION**

      A.     **Long Trusts' Motion for Partial Summary Judgment**

            1.     **Condition Precedent**

Long Trusts argues Pride cannot maintain a claim for breach of contract because Pride failed to satisfy a condition precedent of issuing a valid invoice for Long Trusts' share of the plugging costs.  Long Trusts contends that rather than submitting an invoice, Pride only issued an Authority for Expenditures that demanded over $60,000 more than what may have been owed by Long Trusts.  Long Trusts, therefore, concludes it had no duty to pay Pride anything.  Pride counters that no such condition precedent existed under the JOA.  The Court agrees.

A condition precedent is "one which is to be performed before some right dependent thereon accrues or some act dependent thereon is performed." *Scottsdale Ins. Co. v. Hall*, 73 P.3d 819, 824 (Mont. 2003) citing Mont. Code Ann. § 28-1-403.  Under Montana law, condition precedents "are not favored in the law, must be strictly construed, and must be plainly expressed." *Id.*  A clause in a contract will not be construed as a condition precedent "except where the contract as a whole clearly and expressly shows such to be the intention of the parties." *Atlantic Pac. Oil Co. of Mont. v. Gas Dev. Co.*, 69 P.2d 750, 754-55 (Mont. 1937). "Further '[i]t is a principle of contract law that a mere stipulation or covenant in a

contract will not be construed as a condition precedent, particularly where a

forfeiture would result and where it appears a condition precedent, if desired, could

have been provided for by express agreement." *Scottsdale*, 73 P.3d at 824 citing

*Palmquist v. Allardyce Petroleum Corp.*, 520 P.2d 783, 784 (Mont. 1974).

Under the JOA, the parties agreed to explore and develop their oil and gas

leases and interests, which included sharing in the expenses and the proceeds of the

operations.  (Doc. 26-1 at 3-4.)  Under Section 8 of the JOA, Pride was permitted

to charge Long Trusts for its proportionate share of expenses incurred in

connection with the Wells:

> Except as herein otherwise specifically provided, Operator shall
> promptly pay and discharge all costs and expenses incurred in the
> development and operation of the Unit Area pursuant to this
> agreement and shall charge each of the parties hereto with their
> respective proportionate shares upon the cost and expense basis
> provided in the Accounting Procedure attached hereto and marked
> Exhibit "C."

(*Id.* at 5.)

The JOA also allowed Pride to request payment in advance from Long

Trusts for its share of the estimated amount of future costs:

> Operator, at its election, shall have the right from time to time to
> demand and receive from the other parties payment in advance of
> their respective shares of the estimated amount of the costs to be
> incurred in operations hereunder during the next succeeding month,
> which right may be exercised only by submission to each such party
> of an itemized statement of such estimated costs, together with an
> invoice for its share thereof.  Each statement and invoice for payment
> in advance of estimated costs shall be submitted on or before the 20th

day of the next preceding month.  Each party shall pay to Operator its proportionate share of such estimate within fifteen (15) days after such estimate and invoice is received. . . . Proper adjustment shall be made monthly between advances and actual costs, to the end that each party shall bear and pay its proportionate share of actual costs incurred, and no more.

(*Id.*)

The Accounting Procedure, attached as Exhibit C to the JOA provided the

following process by which costs and expenses were to be shared:

**2. Statement and Billings**
Operator shall bill Non-Operators on or before the last day of each month for their proportionate share of the Joint Account for the preceding month.  Such bills will be accompanied by statements which identify the authority for expenditure, lease or facility, and all charges and credits, summarized by appropriate classifications of investment and expense except that items of Controllable Material and unusual charges and credits shall be separately identified and fully described in detail.

**3. Advances and payments by Non-Operators**
Unless otherwise provided for in the agreement, the Operator may require the Non-Operators to advance their share of estimated cash outlay for the succeeding month's operation.  Operator shall adjust each monthly billing to reflect advances received from the Non-Operators.

Each Non-Operator shall pay its proportion of all bills within fifteen (15) days after receipt. . . .

**4. Adjustments**
Payment of any such bills shall not prejudice the right of any Non-Operator to protest or question the correctness thereof; provided, however, all bills and statements rendered to Non-Operators by Operator during any calendar year shall conclusively be presumed to be true and correct after twenty-four (24) months following the end of any such calendar year, unless within the said twenty-four (24) month

period a Non-Operator takes written exception thereto and makes
claim on Operator for adjustment.  No adjustment favorable to
Operator shall be made unless it is made within the same prescribed
period. . . .

(*Id.* at 21.)

The language of JOA makes it clear that Long Trusts was obligated to share
in the costs of the joint operation.  Nothing in the JOA plainly indicates that the
issuance of an invoice was a condition precedent to Long Trusts' obligation to share
costs.  For example, the JOA "did not use conditional language such as 'if' or
'provided that,' or otherwise indicate that [Long Trusts'] obligation to pay exists
only once [Pride] furnishes an invoice."  *Microsoft Corp. v. Hon Hai Precision
Indus. Co., Ltd.*, 2019 WL 3859035, *5 (N.D. Cal. Aug. 16, 2019) (declining to
construe invoicing provision as a condition precedent).  *See also Crescent Point
Energy Corp. v. Tachyus Corp.*, 2022 WL 2390991 (N.D. Cal. July 1, 2022) (finding
invoicing provision in a contract was not a condition precedent to party's obligation
to pay monthly fees); *Nomadix, Inc. v. Guest-Tek Interactive Entm't LTD*, 2017 WL
7240765, *5 (C.D. Cal. Oct. 17, 2017) (giving examples of conditional language).

Further, the essential agreement between the parties was to share in the costs
and profits associated with producing oil and gas.  (Doc. 26-1 at 3-4.)  Construing
the JOA as requiring the issuance of an invoice as a condition precedent to Long
Trusts' performance under the contract would be inconsistent with the parties'
bargain, and would result in inequitable consequences.

8

Accordingly, the Court finds the billing provisions of the JOA are stipulations or covenants, and not conditions precedent. *Scottsdale*, 73 P.3d at 824; *Atlantic Pac. Oil Co. of Mont.*, 69 P.2d at 755-56 (noting courts are disinclined "to construe the stipulations of a contract as conditions precedent").

### 2. Material Breach

Long Trusts next argues that even if it had a duty to pay something to Pride, its performance is excused because Pride materially breached the JOA; and therefore, Pride cannot maintain its breach of contract action against Long Trusts. Long Trusts alleges numerous breaches, including that Pride: (1) "stole" a pumping unit in 2015; (2) attempted to "defraud" Long Trusts out of more than $60,000; (3) demanded payment in excess of costs to be incurred for the succeeding month's operations; (4) failed to obtain consent of Long Trusts before undertaking a project that required an expenditure of over $20,000; and (5) failed to credit Long Trusts account for over $5,000 from salvage sales.

Pride counters that even assuming it breached the JOA,[2] none of the alleged breaches were material. Pride, therefore, argues the alleged breaches do not excuse Long Trusts' performance.

---

[2] The Court notes there are a myriad of disputed issues of fact concerning Pride's plugging of the Wells and the amount Pride requested for reimbursement of the plugging costs. For example, Long Trusts contends the value of the pumping unit Pride removed was $45,872.73, and based on its working interest, it was entitled to a credit of $11,809.87. (Doc. 37-1 at 12-13.) Pride disputes that any credit was

"Montana law prevents a party in material breach from maintaining a breach of contract action against the other contracting party." *AAA Const. of Missoula, LLC v. Choice Land Corp.*, 264 P.3d 709, 715 (Mont. 2011). "A material breach is one that touches the fundamental purpose of the contract and defeats the object of the parties in making the contract." *R.C. Hobbs Enter., LLC v. J.G.L. Distrib., Inc.*, 104 P.3d 503, 508 (Mont. 2004). A material breach entitles the non-breaching party to terminate the contract. *Id.* In contrast, an incidental breach only entitles the non-breaching party to sue for damages. *Id.* A breach is not material "if the breaching party substantially performed all essential contract requirements." *Davidson v. Barstad*, 435 P.3d 640, 646 (Mont. 2019). "In other words, a breach is not material if the non-breaching party has or will substantially receive 'the expected benefit of the contract.'" *Id.* The determination of whether a breach is material, "is a matter of 'objective reasonableness rather than' the non-breaching party's 'purely subjective belief.'" *Id.*

Here, the fundamental purpose of the parties' agreement was set forth in the opening recital of the JOA:

> [T]he parties to this agreement are owners of oil and gas leases covering and, if so indicated, unleased mineral interests in the tracts of land described in Exhibit "A", and all parties have reached an

owed to Long Trusts, and asserts the pumping unit had a negative value. (Doc. 48-1 at ¶11-15.) Long Trusts also argues Pride breached the JOA by fraudulently demanding over $166,000. (Doc. 40 at 68-75.) Whereas Pride asserts the amount charged was an estimate, and was represented as such. (*Id.*)

agreement to explore and develop these leases and interests for oil and gas to the extent and as hereinafter provided[.]

(Doc. 26-1 at 3.)

The JOA provided further that the parties would share in the proceeds and expenses of drilling oil and gas wells. The essential purpose of the JOA was, therefore, for the parties to produce their oil and gas interests and share in the cost of doing so. Conversely, the breaches alleged by Long Trusts concern the process of plugging and abandoning previously drilled wells. Thus, the alleged breaches did not "defeat[] the object of the parties in making the contract." *R.C. Hobbs Enter., LLC*, 104 P.3d at 508. For example, the parties' dispute concerning the disposition of the pumping unit after the Wells had been plugged is not material to the main purpose of the parties' agreement to "explore and develop" their interests for oil and gas production. The same is true of the remaining breaches alleged by Long Trusts. None pertain to the fundamental purpose of the contract; they involve activities associated with winding down the operation. Accordingly, the Court finds each of the alleged breaches are "incidental and subordinate to the main purpose of the contract." *Norwood v. Serv. Distrib., Inc.*, 994 P.2d 25, 31 (Mont. 2000).

Even assuming Pride breached the JOA provisions with regard to the plugging operations, Long Trusts was still bound to perform its part of the

11

agreement. *Id.* As the Montana Supreme Court has explained, a breach that "goes to only part of the consideration" does not warrant rescission of the contract. *Id.* Rather, the non-breaching party's remedy is to be compensated in damages. *Id.* Accordingly, Pride may maintain its claim for breach of contract, and Long Trusts may seek an adjustment of the amount owed for the plugging operation.

The Court, therefore, recommends that Long Trusts' Motion for Partial Summary Judgment be denied.

### B.   Pride's Motion for Partial Summary Judgment

Pride moves for partial summary judgment on its breach of contract claim. Pride contends that it has satisfied the elements of a claim for breach of contract, with the exception of the amount of damages. Long Trusts again counters that it had no duty to pay anything to Pride because Pride did not satisfy a condition precedent of submitting a valid invoice, and Pride materially breached the JOA. As discussed above, Long Trusts' arguments fail on both fronts.

"The essential elements of a breach of contract claim are the existence of an enforceable contract, the defendant's breach, and damages to the plaintiff caused by the breach." *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 (9th Cir. 2017). *See also* 17A Am. Jur. 2d Contracts § 577.

Here, it is undisputed that there was an enforceable agreement between the parties, and that Pride and Long Trusts were bound to share expenses in accordance with JOA.  (Doc. 51 at ¶¶ 1-3, 5.)  It is also undisputed that Pride conducted plugging operations on the Wells after receiving a letter from the Montana Department of Natural Resources and Conservation, demanding the Wells be plugged.  (*Id.* at ¶¶ 7-8.)  Finally, it is undisputed that Long Trusts never made an election in response to Pride's proposals regarding the plugging of the Wells, and has not paid any share of the plugging costs for the Wells.  (Doc. 40 at 78.)  Therefore, there is no dispute as to any material fact that an enforceable contract existed, and that Long Trust breached its obligation under the agreement to share in the expenses of the well.

In fact, it appears that Long Trusts has conceded, through its expert report, that it is responsible for some amount of money under the JOA.  Specifically, Long Trusts' expert opined:

> Based on the documents reviewed it is my opinion that the true costs to plug and abandon the subject properties is $234,859.94 and the Long Trusts share of these costs is $79,714.89, inclusive of the suspended revenues, as detailed in Exhibit D.

(Doc. 40 at 92.)

Pride has, therefore, established the existence of an enforceable contract and Long Trusts' breach of the same.  The issue of damages remains in dispute however, and must be determined by a jury.

13

Accordingly, the Court recommends Pride's Motion for Partial Summary Judgment on its breach of contract claim be granted, solely as to liability.

## IV.   CONCLUSION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1.      Long Trust's Motion for Partial Summary Judgment (Doc. 35) be **DENIED**; and

2.      Pride's Motion for Partial Summary Judgment (Doc. 38) be **GRANTED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 10th day of August, 2022.

TIMOTHY J. CAVAN
United States Magistrate Judge